UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CONLEY,

    Plaintiff,                                  Civil Action No. 13-13072

v.                                         HON. STEPHEN J. MURPHY, III
                                          U.S. District Judge
                                          HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**<ins>REPORT AND RECOMMENDATION</ins>**

    Plaintiff Michael Conley ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

**<ins>PROCEDURAL HISTORY</ins>**

    Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 9, 2010, alleging disability as of October 1, 1977 (Tr. 158, 165).

After the initial denial of the claim, Plaintiff requested an administrative hearing, held on September 28, 2011 in Detroit, Michigan (Tr. 32). Administrative Law Judge ("ALJ") Patrick J. MacLean presided (Tr. 32). Plaintiff, represented by attorney Frank Cusmano, testified (Tr. 39-64), as did Vocational Expert ("VE") Harry Cynowa (Tr. 64-74). On October 28, 2011, ALJ MacLean found that Plaintiff was not disabled (Tr. 28). On May 29, 2013, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on July 17, 2013.

## BACKGROUND FACTS

Plaintiff, born May 2, 1959, was age 52 when the ALJ issued his decision (Tr. 28, 165). His application for benefits states that he completed eighth grade in 1972 and worked as a fast food cook and laborer for a temporary employment agency (Tr. 232). He alleges disability as a result of a mental condition, learning disability, hypertension, left shoulder problems, and arthritis in the left leg (Tr. 231).

### A.     Plaintiff's Testimony

*Plaintiff's attorney prefaced the testimony by noting that Plaintiff had been found disabled as of October 1, 1977 and had received benefits until the time of a January, 2003 incarceration* (Tr. 34-37).

Plaintiff then offered the following testimony:

Plaintiff left school after sixth grade to become a boxer (Tr. 39-40). He currently lived with his mother in Inkster, Michigan (Tr. 40-41). He had been living at the Inkster

address since June, 2010, when he was released from prison (Tr. 41). Before going to prison in 2003, he had been receiving disability benefits since the age of 18 (Tr. 41). He had not worked since being released from prison (Tr. 42). He had not looked for work due to knee pain (Tr. 43). He reported knee and hip pain to prison health care workers but had been advised to take aspirin for the conditions (Tr. 43). He had not sought treatment for the knee and hip conditions since his release from prison, due to his inability to afford medical care (Tr. 44). His failure to seek treatment at free clinics was due to his inability to "walk that far" (Tr. 44). Neither he nor his mother drove, but he had been able to take a bus to the administrative hearing (Tr. 45).

Plaintiff was able to perform household chores when his "legs let him" (Tr. 47). He typically washed dishes, took out the trash, prepared simple meals, and performed some laundry chores (Tr. 47-49). He had used a cane for the last 10 years (Tr. 49). The hip problems were worse on the left side (Tr. 50). He had been receiving treatment for mental health conditions until running out of money five months earlier (Tr. 51, 53). He did not experience good results from antidepressants (Tr. 51). He took Motrin 800 for hip and knee pain (Tr. 52).

Plaintiff was unable to sit for more than 20 minutes or stand for more than "10 seconds" (Tr. 55). He was unable to walk for more than 10 minutes (Tr. 56). He always used his cane when walking (Tr. 56). He experienced the medication side effects of blurred vision (Tr. 57). His most comfortable position was sitting upright in a chair (Tr. 57). He was

unable to lift more than 10 pounds due to arthritis in both hands (Tr. 57). He experienced memory problems (Tr. 58). He was hospitalized at the age of 18 for an emotional condition (Tr. 59). He was unable to use the internet features of a "smart phone," but was able to use a telephone to make calls (Tr. 58). He experienced sleep interruption due to worry about his financial situation and his ability to adjust to life outside of prison (Tr. 59). He now dealt with stress and family conflicts by smoking and taking time to collect himself rather than acting out (Tr. 62). Plaintiff experienced arthritis in the upper right extremity as a result of breaking his shoulder in the 1990s (Tr. 63).

 **B.** **Medical Evidence[1]**

### 1. Treatment-Related Sources

In February, 2010, Michigan Department of Correction ("MDOC") staff conducted a mental health evaluation, noting Plaintiff's report that he was able to read a newspaper, albeit with difficulty (Tr. 324). Plaintiff also reported that when he was 30, he learned anger management skills during a two-month inpatient mental hospital stint (Tr. 324). He denied depression (Tr. 324). He reported good physical health and "intact" energy (Tr. 324). The evaluation notes state that Plaintiff was able to perform activities of daily living and had an "adequate" group of friends (Tr. 324). His thought content was deemed "rational, goal

---

[1]Hospital records at transcript pages 291-295 and 304-321 pertain to another individual. However, even absent those records, the ALJ's decision was generously supported by substantial evidence. Plaintiff has not argued that the inclusion of these irrelevant records constitutes reversible error.

directed, and lucid" (Tr. 324). He did not exhibit memory problems and appeared fully oriented (Tr. 324-326). His intelligence was deemed "below average (Tr. 325). He was assigned a GAF of 70[2] (Tr. 326). April, 2010 MDOC treating notes state that Plaintiff reported left hip pain after taking a fall at work (Tr. 327-328). X-rays of the left hip showed "no fracture or dislocation" (Tr. 302-303). He was diagnosed with "hip strain" and prescribed Motrin 800 (Tr. 296, 301).

In December, 2010, Plaintiff sought psychiatric counseling for depression (Tr. 360). He indicated that he had not used marijuana or cocaine in the past "one or two months" (Tr. 360, 374). Intake notes state that Plaintiff had a current GAF of 40 due to depression, substance abuse dependence, and housing and legal problems[3] (Tr. 358, 372). On December 29, 2010, psychiatrist John Head, D.O. noted Plaintiff's report of reduced symptoms of "sadness, loss of interest and guilt" since his last visit (Tr. 350, 367). Dr. Head noted that Plaintiff was well groomed and fully oriented but experienced below average intelligence (Tr. 350). He noted diagnoses of a depressive disorder and a learning disorder (Tr. 350). He

---

[2] GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, 34 ("*DSM–IV–TR*") (4th ed.2000).

[3] A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *DSM–IV* at 34.

assigned Plaintiff a GAF of 54[4] (Tr. 350). Counseling notes from the same period state that Plaintiff appeared "more stable than ever . . ." (Tr. 352, 366).

## 2. Non-treating Sources

In September, 2010 Elizabeth Edmond, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report that he lifted up to 250-pound weights while in prison despite shoulder pain related to a boxing injury (Tr. 339). Dr. Edmond noted that Plaintiff was cooperative and was able to follow instructions (Tr. 339). Plaintiff demonstrated a limited range of left shoulder and left hip motion (Tr. 340, 342). Dr. Edmund observed that Plaintiff could walk without a cane but "may soon require the use of a cane . . ." (Tr. 341). Plaintiff was able to write and demonstrated the ability to open a jar and tie his shoelaces (Tr. 341, 344). Dr. Edmund found "probable arthritis of the left shoulder and left hip (Tr. 340).

The same month, psychologist Terrance A. Mills, Ph.D. performed a consultative mental examination, noting an appropriate affect and a friendly, but reserved attitude (Tr. 347). Plaintiff reported that he was independent in personal care activities and was able to perform household activities (Tr. 347). Dr. Mills noted that intelligence testing yielded a full scale IQ of 52 consistent with mild mental retardation (Tr. 348). He assigned Plaintiff a GAF

---

[4] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM–IV* at 34.

of 50[5] (Tr. 349). Dr. Mills concluded that Plaintiff's "ability to understand, retain, and follow simple instructions and perform simple, repetitive, and routine tasks appear[ed] to be mildly to moderately impaired. His ability to interact with peers, coworkers, supervisors, and the public and respond to changes in [his] environment appears to be adequate" (Tr. 349). He found that Plaintiff would be unable to manage his benefit funds (Tr. 349).

### C. The Vocational Expert

VE Harry Cynowa found that Plaintiff's past work activity did not constitute "past relevant work" for the purposes of the disability analysis (Tr. 64). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age and education:

> [A]ssume a person . . . who is able to perform work with no exertional limitations. Should never climb ladders, ropes or scaffolds. Occasionally climb ramps or stairs, balance, stoop, crouch, kneel and crawl who's work would be limited to simple, routine or repetitive tasks specifically limited to one or two step tasks with only occasional interaction with the public and with coworkers. Are there any jobs in the national economy that such a person could perform? (Tr. 65).

The VE found that the above-described individual could perform the unskilled, exertionally heavy[6] work of a general laborer (1,000 jobs in existence in the local economy)

---

[5] A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV–TR* at 34.

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

(Tr. 66). At the medium exertional level, the VE testified that the same individual could perform the unskilled work of cleaner (1,000); laundry worker (3,000); and kitchen helper (10,000) (Tr. 66). At the light level, he testified that the individual could perform the work of a hand packager (2,500) and small products assembler (2,500) (Tr.66- 67). Finally, the VE testified that if the same individual were limited to sedentary work, he could perform the jobs of bench assembler (3,250) and hand packager (3,250) (Tr. 67). The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 68-69).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ MacLean found that Plaintiff experienced the severe impairments of "cognitive disorder, not otherwise specified; depressive disorder, not otherwise specified; a learning disorder, not otherwise specified; a history of rotator cuff tear in the left shoulder; chronic left hip pain; chronic hand locking, [and] leg length discrepancy," but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 21). The ALJ found that Plaintiff experienced moderate limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 21-22). He concluded that Plaintiff retained the

---

tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Residual Functional Capacity ("RFC") for medium work with the following limitations:

> [He] can lift or carry 25 pounds frequently and 50 pounds occasionally (from very little, up to 1/3 [of] an 8-hour workday); never climb ladders, ropes or scaffolds; and can occasionally climb, balance, stoop, crouch, kneel, and crawl; work is limited to simple, routine and repetitive tasks performed at [Specific Vocational Preparation] 1 or $2^7$ as defined in the DOT; only occasional interaction with the public; only occasional interaction with co-workers (Tr. 23).

Citing the VE's job numbers (see above) the ALJ found that Plaintiff could work as a cleaner, laundry worker, or kitchen helper (Tr. 28).

The ALJ concluded that Plaintiff's allegations of disability were "less than fully credible," finding that Plaintiff's "description of the symptoms and limitations" was "generally . . . inconsistent and unpersuasive" (Tr. 26). The ALJ cited Dr. Edmond's observation that Plaintiff did not use a cane and demonstrated a full range of motion in all joints except the left shoulder and left hip (Tr. 25). The ALJ noted that Plaintiff was able to lift 250 pound weights while in prison (Tr. 25).

The ALJ also rejected Plaintiff's professed degree of mental limitation, noting that Plaintiff was able to perform household chores, shop, do laundry, and prepare simple meals (Tr. 26). The ALJ noted that Plaintiff's testimony that he had not used drugs since leaving prison stood at odds with December, 2010 treating notes alluding to recent recreational drug

---

7

 Specific Vocational Preparation ("SVP") measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http:// www.occupationalinfo.org (last visited on November 5, 2014). An SVP of 1 or 2 refers to unskilled work. SSR 00–04p.

use (Tr. 26).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Step Three Determination

Plaintiff argues that he is disabled under paragraph B of Listing 12.05 (mental retardation). *Plaintiff's Brief* , 17-24, *Docket #15* (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05).  He contends that the claim was denied on the erroneous basis that he could not provide IQ scores predating his 22nd birthday.  *Id.* at 17-18 (citing Tr. 22).  Citing *West v. CSS,* 240 Fed. Appx. 692, 698, 2007 WL 1991059 *5 (6th Cir. July 5, 2007), Plaintiff argues that the Listing does not require him to produce an IQ score obtained before the age of 22 to establish disability.  *Plaintiff's Brief* at 20.

"A finding of 'disabled' will be made at the third step if the claimant can . . . demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)(citing 20 C.F.R. § 404.1520(d)). To show disability under paragraph B of Listing 12.05, a claimant must make a threshold showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22," and, under paragraph B, a " valid verbal, performance, or full scale IQ of 59 or less."

In concluding that Plaintiff was not disabled under Listing 12.05B, the ALJ found as follows:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. The claimant was tested by Dr. Mills, a consultative examiner, who determined . . . the claimant's full scale intelligence was 52 . . . However, there is no indication that the claimant was ever tested prior to this time, or that he bore an IQ of 59 or less prior to his 22nd birthday" (Tr. 22-23).

The ALJ's statement, taken out of the context of his analysis, suggests that he erroneously based his Step Three finding on the mere absence of an IQ score obtained before Plaintiff's 22nd birthday. Of course, neither the threshold criteria nor paragraph B requires that the IQ score of 59 or less must be obtained before the 22nd birthday. However, the ALJ continued discussion makes clear that he did not base his findings on the lack of earlier IQ testing, but instead, because Plaintiff had not established the second portion of the threshold

-12-

requirement for disability under Listing 12.05:

> There is no evidence other than claimant's own statements that he manifested any deficits in adaptive functioning during his developmental period. . . . [C]laimant alleged that he left school in the 6th grade not because he found it difficult, but because he wanted to engage in the sport of boxing (Tr. 23 citing 39-40).

The ALJ did not err in finding that Plaintiff did not make the required initial showing of "significantly subaverage general intellectual functioning" accompanied by "deficits in adaptive functioning initially manifested during the developmental period." *Id.* Assuming Plaintiff could show that he experienced significantly subaverage intelligence during his formative years, he has provided no evidence of adaptive limitations. To establish deficits in "adaptive functioning", a claimant must show limitations in two of the following areas: "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Hayes v. Commissioner of Social Sec.* 357 Fed.Appx. 672, 677, 2009, WL 4906909, *5 (6th Cir. December 18, 2009)(citing *DSM–IV–TR* at 49). The ALJ did not err in finding a dearth of evidence supporting the onset of adaptive limitations before Plaintiff's 22nd birthday. Therefore, assuming that Plaintiff could show "subaverage" intellectual functioning during his formative years, he has not provided evidence to show that he experienced at least two limitations in any other area of adaptive functioning. *Foster, supra*, 279 F.3d at 355 (citing *Burrell v. Comm'r of Social Security*, 2000 WL 1827799, at *2 (6th Cir. Dec.8, 2000))(to meet the threshold requirement of Listing 12.05, intellectual deficits must be accompanied

by limitations in adaptive function). The ALJ reasonably found that Plaintiff's testimony that he dropped out of school to pursue boxing undermined his claim that his failure to finish school due to intellectual or adaptive limitations (Tr. 23). The ALJ correctly noted that Plaintiff had provided *no* academic, legal, or medical evidence of adaptive limitations before the age of 22 (Tr. 23).

Plaintiff's contention the record supports the presence of adaptive limitations occurring before the age of 22 is not well taken. *Plaintiff's Brief* at 19-23. While Plaintiff testified that he was hospitalized at the age of 18 for an emotional condition, (Tr. 59), the ALJ noted that none of the MDOC medical records supported an "abnormal mental health history" (Tr. 24). The ALJ cited February, 2010 consultation records stating that Plaintiff denied anger management problems, anxiety, or a mood disorder (Tr. 24, 324). While the February, 2010 consultative findings state that Plaintiff reported a psychiatric hospitalization at the age of 30, neither these findings nor any evidence support his testimony that he was hospitalized at the age of 18 (Tr. 324). Plaintiff cites December, 2010 treating records to support the contention that he was hospitalized "when he was [a] child." *Plaintiff's Brief* at 21-22 (citing 346). However, the December, 2010 records actually state that Plaintiff reported that he was hospitalized when he was "young" (Tr. 346). It is unclear whether Plaintiff (51 at the time of the December, 2010 treatment) was referring to his hospitalization at the age of 30 (Tr. 324) or another hospitalization during his formative years (Tr. 346). Plaintiff cites his testimony that he did not know how to use a computer or most of the

features of a "smart phone" to support the presence of both intellectual and adaptive limitations prior to his 22nd birthday. *Plaintiff's Brief* at 22 (citing 57). However, his acknowledgment that he was able to make telephone calls (Tr. 58) and use public transportation independently (Tr. 45) stands at odds with his claim that he experiences disabling intellectual or adaptive limitations. Plaintiff's allegations of disability as a result of such deficiencies are also undermined by MDOC records showing that Plaintiff was able to hold a job in the prison kitchen (Tr. 327-328).

Plaintiff also argues that the September, 2010 IQ scores showing "mild mental retardation" support the presence of the condition before the age of 22. *Plaintiff's Brief* at 23 (citing Tr. 348). He relies on *Pearson v. CSS,* 2008 WL 2325617, *6 (W.D.Mich. May 19, 2008) for the proposition that IQ tests showing mental retardation administered decades after the age of 22 can create a "reputable presumption" of the condition prior to the age of 22. *Plaintiff's Brief* at 20 (citing *Id.*); *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir.2001). He faults the ALJ's finding that the test scores showing mild retardation 30 years after Plaintiff's formative years ended were not entitled to significant weight. *Id.* (citing Tr. 23). However, assuming the ALJ had found that the 2010 IQ scores established the presence of mental retardation before the age of 22, the result would be unchanged. While in *Pearson,* the court credited the IQ scores administered decades after claimant reached adulthood, the court found, as here, that the claimant had failed to show that the intellectual deficiencies during the developmental years were accompanied by adaptive limitations. *Id.*

at *6. Consistent with *Pearson,* the current Plaintiff has provided "no evidence" of "deficiencies in adaptive behavior prior to the age of 22." *Id.* ; (Tr. 23). Significantly, while Plaintiff notes that he was found disabled by the SSA as of October 1, 1977, he has not stated the basis for the disability finding or presented evidence to show that the now-terminated benefits have any bearing on the present claim. *Plaintiff's Brief* at 21; *see also Reply,* 3, *Docket #19.*

Further, while Plaintiff argues that his claims of limitation ought to have been credited, the ALJ did not err in determining that Plaintiff's unsupported testimony of limitation was "inconsistent and unpersuasive" (Tr. 26). My own review of the transcript shows that the credibility determination is well supported. The ALJ noted that the allegations of limitation as a result of hip and shoulder problems were undermined by Plaintiff's ability to engage in a wide variety of household activities, the failure to seek long-term treatment for the allegedly disabling physical problems, and the MDOC records showing that Plaintiff received only brief and conservative care before returning to work (Tr. 24-26). Plaintiff's claim that he had not sought work since his release from prison because he was unable to "walk too far" is likewise defeated by his daily activities and his failure to seek medical care since leaving prison (Tr. 43). While Plaintiff testified that he did not seek free medical treatment due to either transportation or physical limitations, the ALJ noted that Plaintiff was able to take a bus by himself to the administrative hearing (Tr. 44-45). Because the ALJ's finding that Plaintiff did not meet the threshold requirement of Listing 12.05B is well

supported and explained, a remand on this basis is not warranted.

### B. Dr. Mill's Findings

Plaintiff also argues that the ALJ erred by "neglecting to identify and properly explain the weight" assigned to Dr. Mills' September, 2010 findings. *Plaintiff's Brief* at 24-25. Plaintiff notes that Dr. Mills' finding that the ability to perform "simple, routine, and repetitive tasks" was mildly to moderately limited stands at odds with the RFC stating only that Plaintiff was restricted to "simple, routine, and repetitive tasks." *Id.* (citing Tr. 23, 349). Plaintiff contends, in effect, that while the ALJ appeared to assign substantial weight to Dr. Mills' conclusion, the limitation to "simple, routine, and repetitive tasks" found in the RFC impermissibly truncates Dr. Mills' finding that Plaintiff would experience "mild to moderate limits" in performing "simple, routine, and repetitive tasks." *Id.*

This argument fails for a number of reasons. First, the ALJ's use of the ubiquitous modifiers of "simple, routine, and repetitive" does not suggest that he accorded substantial weight to Dr. Mills' opinion.[8]  Even if the use of the terms "simple routine, and repetitive" in the RFC could be construed as an "adoption" of Dr. Mills' finding, the RFC did not simply restrict Plaintiff to "simple, routine, and repetitive" work, but rather, augmented the modifiers by limiting Plaintiff to work at SVP 1 (work that be could learned by "short

---

[8] A Westlaw search of the terms "simple, routine, and repetitive" AND 405(g) shows that the same modifiers have been used during vocational testimony and/or included in the RFC in approximately 900 district court claims brought under 42 U.S.C. 405(g).

demonstration only," or SVP 2 ("short demonstration up to and including 1 month").[9] Assuming that the ALJ adopted the consultative findings, the RFC would adequately reflect those conclusions.

However, the opinion as a whole does not suggest that the ALJ adopted Dr. Mills' opinion. The ALJ cited the February, 2010 conclusions of MDOC consultative source showing a GAF of 70 and December, 2010 treating source notes indicating a GAF of 54 (Tr. 24, 26). The administrative opinion does not contain any suggestion that the ALJ accorded greater weight to Dr. Mills' finding of a GAF of 45 or Dr. Mills' accompanying conclusions. To the contrary, the ALJ stated that he considered the objective evidence, consultative findings, the ability to perform a fairly wide range of activities, and Plaintiff's "inconsistent and unpersuasive" claims in tandem to form the RFC (Tr. 26).

Finally, Plaintiff cites 20 C.F.R. § 416.927(e)(2)(ii) which states that the ALJ "must explain . . . the weight given to a State agency medical or psychological consultant." *Plaintiff's Brief* at 25. However, while the ALJ refrained from articulating the precise weight given to Dr. Mills' opinion, this by itself does not provide grounds for remand. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' " *Kornecky*

---

[9]DOT, Appendix C, http:// www.occupationalinfo.org (last visited on November 5, 2014).

*v. Commissioner of Social Security,* 2006 WL 305648, *8–9 (6th Cir. February 9, 2006)(citing Loral Defense Systems–Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir.1999)); See also *Kendrick v. Commissioner of Social Sec.,* 2014 WL 1260665, *1, 10 (E.D. Mich. February 10, 2014)(Steeh, J.)(notwithstanding the requirements of § 416.927(e)(2)(ii), failure to accord specific weight to consultative opinion harmless error at most where ALJ nonetheless discussed and considered the source's findings); *Dykes ex rel. Brymer v. Barnhart,* 112 Fed.Appx. 463, 467-468, 2004 WL 2297874, *4 (6th Cir. October 12, 2004)(same). Likewise here, a finding of harmless error, at most, is particularly advisable given that the ALJ's rationale for the non-disability finding is well supported and explained.

Because the determination that the Plaintiff was capable of a significant range of unskilled, exertionally medium work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address, specifically and in the same order raised, each issue contained within the objections.


                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE
Dated:  November 14, 2014


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 14, 2014, electronically and/or by U.S. mail.

                                              s/Marlena Williams
                                              Case Manager