UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CONLEY,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 13-cv-13072

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING THE REPORT
AND RECOMMENDATION** (document no. 20)**, GRANTING THE
COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (document no. 18)**,
AND DENYING CONLEY'S MOTION FOR SUMMARY JUDGMENT** (document no. 15)

    Michael Conley applied for Social Security Disability Insurance Benefits and Supplemental Security Income. The Social Security Administration denied his application in an opinion issued by an Administrative Law Judge ("ALJ"). After the Appeals Council declined to review his claim, he appealed the decision to this Court under 42 U.S.C. § 405(g). The Court referred the case to United States Magistrate Judge Steven Whalen. Both parties then filed motions for summary judgment. The magistrate issued a Report and Recommendation advising the Court to grant the Commissioner's motion and dismiss the case. Conley filed a timely objection.

## BACKGROUND

    Conley was born on May 2, 1959, and was 52 years old when the ALJ denied his application for social security benefits. When Conley was 13 years old, he dropped out of school to pursue boxing. Over the next few years he worked as a fast food cook and a laborer for a temporary employment agency. But his earnings never amounted to more than a few hundred dollars.

In 1977, at the age of 18, Conley began receiving social security disability benefits; he claims the Commissioner awarded him benefits because he suffers from an intellectual disability, though the Social Security Administration's records were destroyed and are not part of the record. He also claims he was hospitalized at age 18 for emotional problems. In the 1990s, he injured his shoulder in a boxing accident. Though he had surgery on the shoulder, Conley claims the damage led to arthritis in his shoulder and arm. He was also shot in Atlanta around 1990, though the injury does not appear to have caused permanent damage. Tr. 339, ECF No. 11-7.

Conley was incarcerated in 2002 (for reasons unrelated to his disability payments), and the Commissioner canceled his payments in January of 2003. While in prison, Conley lifted weights, and claimed to squat 250 pounds. Tr. 339. In April of 2010 he fell and hurt his hip and knee, an injury that he reported to prison health care. Tr. 327. They recommended he take pain killers, but provided no other treatment. Tr. 328. He also suffered from rectal prolapse, and was treated at a hospital before returning to prison.

While in prison, medical staff conducted a mental evaluation. It noted that prior to incarceration, he had been using crack cocaine heavily.[1] It also provided that when he was in his 20s, he was "struck in the head with a metal object during a fight." Tr. 324. The report stated his thoughts were "rational, goal directed, and lucid," that he did not have any memory problems, but that his intelligence level was below average. Tr. 324–25.

After being released from prison, Conley reapplied for social security benefits. Various physicians evaluated Conley in support of his application. Dr. Terrance Mills found

---

[1] According to the medical report, Conley stated he was using $100 to $500 of the drug each day. Tr. 324.

2

that Conley suffered from a learning disorder, and noted that he had been in special education classes as a child. Tr. 346. He stated Conley's responses were "spontaneous, clear, on target, of limited depth, and displayed no circumstantial or tangential tendencies." Tr. 347. Dr. Mills also administered an IQ test, which revealed Conley had a full scale IQ of 52, "within the range of mild mental retardation." Tr. 348. Dr. Mills stated the "[t]est scores are believed to be valid as he understood directions with minor clarification, was attentive, and appeared to put forth good effort." Tr. 348. He further explained that Conley's "ability to understand, retain, and follow simple instructions and perform simple, repetitive, and routine tasks appears to be mildly to moderately impaired." Tr. 349.

For several months after his release from prison, Conley sought psychiatric treatment at Team Mental Health, a clinic in Southeast Michigan. Treatment notes reveal that Conley had not used marijuana or cocaine in "one or two months." Tr. 374. They also describe a patient struggling with depression, a learning disorder, low intelligence, and housing as well as legal troubles.

Conley had a hearing before an ALJ in September of 2011, where he reported that he had been living with his mother since leaving prison. He had not looked for employment due to soreness in his knees and hips. Tr. 43, ECF No. 11-2. And he had not undergone any treatment for pain. Tr. 44. He stated that he did not drive, but that he was able to take public transportation when he had the money. Tr. 45. During the day, he helped his mother clean and do laundry, and was able to cook when his legs were not too sore. Tr. 47–48. Due to arthritis, he had problems sitting for more than a few minutes without readjusting, he walked with a cane, and could not go more than a block without taking a break. Tr. 55–56.

The ALJ issued a written opinion denying an award of benefits. He found that Conley had not engaged in substantial gainful employment since October 1, 1977, the alleged onset date. Tr. 20. Conley presented with several severe impairments, including both cognitive disorders and significant physical limitations. Tr. 21. Nonetheless, the ALJ found that Conley's condition did not equal in severity any of the impairments listed in the regulations. In particular, the ALJ determined that Conley was not intellectually disabled under Listing 12.05. Tr. 21–23. Next, he ruled that Conley could perform medium intensity work, that was "limited to simple, routine and repetitive tasks performed at SVP1 or 2 as defined in the DOT; only occasional interaction with the public; only occasional interaction with co-workers." Tr. 23. Based on Conley's residual functional capacity, the ALJ found that there were a significant number of jobs Conley could perform, thereby rendering him not disabled within the meaning of the Social Security Act. Tr. 27–28.

## STANDARD OF REVIEW

A claimant may appeal a social security administration decision to a United States district court. 42 U.S.C. § 405(g). The district court's review, however, "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court will affirm the Commissioner's decision "if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Id.* (citations omitted). Nonetheless, an "ALJ's failure to follow agency rules

4

and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Id.* (citations omitted).

## DISCUSSION

Conley provides two reasons why the ALJ erred in finding him not disabled. First, Conley argues that he is intellectually disabled within the meaning of 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05B. Second, he argues that the ALJ failed to properly explain the weight that he gave to Dr. Mills' findings.

I. The ALJ's Conclusion That Conley Was Not Intellectually Disabled Under Section 12.05B Was Supported By Substantial Evidence

The Social Security regulations provide that if a claimant's limitations equal in severity one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1, the ALJ must find the claimant disabled. Conley argues that he is intellectually disabled within the meaning of Listing 12.05B, which provides:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05B. The regulations further provide that paragraph B "contain[s] criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A.

5

Dr. Mills administered an IQ test that determined Conley had a full scale IQ of 52. Nonetheless, the ALJ found Conley's condition did not satisfy the criteria set forth in Listing 12.05B. He put forth two reasons. First, he stated that Conley's IQ score was not valid. And second, he posited there was insufficient evidence showing Conley's intellectual disability initially manifested prior to age 22. The Court addresses each justification in turn.

### A.   The Validity Of The IQ Score

The Sixth Circuit has stated "the mere fact of a qualifying IQ score does not require that the ALJ find [intellectual disability] under Section 12.05B when substantial evidence supports the contrary conclusion or the claimant's allegations of her capabilities are deemed not credible." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012). In that case, the court upheld an ALJ's determination that the claimant was not disabled, notwithstanding an IQ test of 59. The claimant was "able to care for herself and her father's apartment, including cooking, cleaning, shopping, keeping track of her medical appointments, and maintaining personal hygiene." *Id.* The court explained that other doctors thought the IQ score underestimated her capabilities. It noted a previous IQ score nearly twenty points higher. And it emphasized her extensive prior work history, as well as her own testimony stating she was mentally capable of continuing that work. *Id.*; *see also Dragon v. Comm'r of Soc.* Sec., 470 F. App'x 454 (6th Cir. 2012) ("The ALJ may choose to disregard I.Q. scores that would normally lead to a finding of a disability when those scores were undermined by a doctor's full evaluation."); Lowes *v. Comm'r of Soc. Sec.,* No. 12-13077, 2013 WL 4413751 (E.D. Mich. Aug. 15, 2013) (upholding ALJ's finding that claimant had not satisfied Listing 12.05B when the claimant had recent IQ scores above

6

60, took care of his personal needs, had multiple hobbies, and had a substantial work history).

In the present case, the ALJ failed to articulate a plausible basis for finding Conley's IQ score invalid. The extent of his analysis was his statement that "there is no indication that the claimant was ever tested prior to this time, or that he bore an IQ of 59 or less prior to his 22nd birthday." Tr. 22–23. But while the Sixth Circuit has found that a prior IQ test with a higher score can invalidate a later IQ test suggesting intellectual disability, *see Courter,* 479 F. App'x at 721, the Court has not found any case stating that the lack of a prior test invalidates a later score.

Furthermore, the ALJ's requirement that Conley have an "IQ of 59 or less prior to his 22nd birthday" is simply a misstatement of the law. The Regulations require only that the deficits "initially manifest" prior to the 22nd birthday, not that the claimant have an IQ of 59 or less prior to that age. Indeed, the Sixth Circuit has specifically stated that "while the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, a claimant is by no means *required* to produce an IQ score obtained prior to age 22." *West v. Comm'r of Soc. Sec.,* 240 F. App'x 692, 698 (6th Cir. 2007) (emphasis in original).

Even incorporating the rationales in other parts of the ALJ's opinion, there is not enough evidence to invalidate the IQ score. For example, in another part of the opinion, the ALJ states that Conley "acknowledges taking care of his personal needs without assistance, cooks, cleans, does laundry, he rides in cars and grocery shops in stores." Tr. 21. The regulations provide that activities of daily living are one factor in evaluating the validity of an IQ score. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C(1). But the Sixth

Circuit has found that such activities, standing alone, are consistent with an intellectual disability. *Dragon v. Comm.'r of Soc. Sec.*, 470 F. App'x 454, 463 (6th Cir. 2012) (ordering award of benefits to claimant with an IQ score of 50, notwithstanding the fact that claimant had graduated high school, and adequately took care of her child). And unlike in *Courter,* there are no previous higher IQ scores, no longstanding work history, and the ALJ does not mention any other physician's opinion concluding that the IQ score underestimates Conley's capacity.

Finally, the ALJ ignored Dr. Mills statement that the "test scores are believed to be valid as he understood directions with minor clarification, was attentive, and appeared to put forth good effort." Tr. 348. Dr. Mills was in the best position to evaluate whether the IQ test accurately reflected Conley's capabilities. Yet, the ALJ never mentioned the physician's statements about the validity of the test. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (observing that "failure to consider the record as a whole undermines" denial of benefits). Accordingly, the ALJ's determination that the IQ test was invalid is not supported by substantial evidence.

B.  <u>Onset Before Age 22</u>

Although Conley's IQ score is valid, Conley still bears the burden of showing that his intellectual disability manifested before age 22—as opposed to developing later from being "struck in the head with a metal object during a fight," Tr. 324, or years of boxing and heavy drug use. The ALJ found "no evidence other than the claimant's own statements that he manifested any deficits in adaptive functioning during his developmental period." Tr. 23. In support, the ALJ emphasized "that he left school in the 6th grade not because he found it difficult, but because he wanted to engage in the sport of boxing." *Id.* The magistrate's

recommendation advising the Court to dismiss the case relied on the lack of adaptive limitations during Conley's formative years. Report 13, ECF No. 20.

Conley argues that he exhibited deficits in adaptive functioning prior to age 22. Conley contends that because the Social Security Administration found him disabled at the age of 18 and awarded benefits for the next 33 years, this supports a finding that he was mentally impaired from a young age. Unfortunately, the Administration destroyed Conley's records, and thus there is no evidence of why the Administration awarded benefits. The Court acknowledges the documents were destroyed through no fault of Conley's, and that their absence prejudices his claim. Nonetheless, such misfortune does not change the reality that there is no record of why the Administration previously awarded Conley benefits. The ALJ did not err by failing to assume the content of non-existence documents.

In addition, Conley contends his shoddy employment record and "history of incarceration also supports a lack of acquired adaptive skills." Obj. 6, ECF No. 21. The record shows, however, that Conley boxed consistently for many years and labored in the prison's kitchen, repudiating his argument that mental disability prevented him from working. Furthermore, the Court is loathe to find that past criminality and a history of incarceration supports an award of government benefits.

The Court finds the ALJ's determination that Conley's intellectual disability did not manifest prior to age 22 to be supported by substantial evidence.

II. <u>ALJ's Residual Capacity Determination Was Supported By Substantial Evidence</u>

20 C.F.R. § 416.927(e)(2)(ii) states an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." In this case, Dr. Mills

9

provided a medical consultation, "opining that the claimant's ability to understand, retain, and follow simple instructions and perform simple, repetitive, and routine tasks was mildly to moderately impaired." Tr. 26, 349. The ALJ's residual functional capacity determination stated Conley could perform work "limited to simple, routine and repetitive tasks performed at SVP1 or 2 as defined in the DOT; only occasional interaction with the public; only occasional interaction with co-workers." Tr. 23.

Conley contends the ALJ's failure to incorporate Dr. Mills' opinion, or fully explain the weight given to the opinion, warrants a remand. The ALJ's failure to articulate the precise weight given to Dr. Mills' opinion, however, was a harmless error. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (holding failure to discuss physician's report harmless error); *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507–09 (6th Cir. 2006) (same). Dr. Mills was not a treating physician, and he only evaluated Conley a single time. Furthermore, substantial evidence in the record, including the treatment notes from The Treatment Health Services and prison counseling, show Conley has good judgment and insight, as well as logical and coherent thoughts. In addition, his description of his daily activities and his ability to take public transportation support a finding that Conley can engage in simple, repetitive tasks.

## CONCLUSION

In conclusion, the Court will adopt the magistrate's report and recommendation. The ALJ's finding that Conley had not shown his intellectual disability manifested prior to age 22 was supported by substantial evidence. And the ALJ's failure to articulate the specific weight given to Dr. Mills' report was harmless error.

# ORDER

**WHEREFORE, IT IS HEREBY ORDERED** that the Court will **ADOPT** the Magistrate Judge's Report and Recommendation (document no. 20).

**IT IS FURTHER ORDERED** that the Court will **GRANT** the Commissioner's Motion For Summary Judgment (document no. 18).

**IT IS FURTHER ORDERED** that the Court will **DENY** Conley's Motion For Summary Judgment (document no. 15) and **DISMISS** the case.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 29, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 29, 2015, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager